(28 Misc. Rep. 490.)

MARX et al. v. PENNSYLVANIA FIRE INS. CO. OF PHILADELPHIA, PA.
SAME v. SPRINGFIELD FIRE & MARINE INS. CO. OF SPRING-
FIELD, MASS.  SAME v. MECHANICS' INS. CO. OF PHILADELPHIA,
PA.  SAME v. PALATINE INS. CO., LIMITED, OF MANCHESTER,
ENG.  SAME v. FIREMEN'S FUND INS. CO. OF SAN FRANCISCO,
CAL.

(Supreme Court, Appellate Term.  July 26, 1899.).

DISCOVERY—WHAT MUST BE SHOWN.

> Where a party applies for an order requiring his adversary to give his
> attorney a sworn copy of certain papers referred to in a pleading, or to
> allow inspection thereof, he must show to the satisfaction of the court
> the materiality and necessity of the discovery and inspection sought, the
> particular information which he requires, and, in the case of books and
> papers, that there are entries therein as to the matter of which he seeks
> discovery or inspection.

Appeal from city court of New York, general term.

Actions by Harry Marx and another against the Pennsylvania
Fire Insurance Company of Philadelphia, Pa., and four other com-
panies, on a fire insurance policy.  From an order of the general
term (56 N. Y. Supp. 391) affirming an order granting plaintiffs' mo-
tion for a discovery and inspection of certain documents, defendants
appeal.  Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-
TRITT, JJ.

Edgar J. Nathan and Raymond Reubenstein, for appellants.

Mitchell L. Erlanger, for respondents.

MacLEAN, J.  Prior to the 18th of January, 1898, the defendant
issued a policy in the New York standard form to the plaintiffs for
the sum of $1,500, insuring the plaintiffs against all direct loss by
fire of the property described in the complaint.  On that January
18th, a fire occurred, resulting in a loss to the plaintiffs, as they al-
lege, of $13,223.71, of which sum they claimed $1,500 on the defend-
ant's policy.  There was in the policy the following clause: "The
insured, as often as required, shall exhibit to any person designated
by this company all that remains of any property herein described,
and submit to examination under oath by any person named by
this company, and subscribe the same."  Thereunder an examination
was had of the plaintiffs between March and June, 1898, the tran-
script of which covered about 300 typewritten pages.  The defend-
ant refused to pay the loss, and this action was commenced on No-
vember 22, 1898.  In their complaint the plaintiffs alleged that they
had "duly rendered a statement and proofs of loss to the defendant,
signed and sworn to by the plaintiffs, as provided in and required
by the terms and conditions of the said policy."  In its answer,
the defendant, among other things, alleged in paragraph 5 that by
its conditions the policy was to be void if the insured misrepre-
sented, in writing or otherwise, any material fact, or if the interest
of the insured in the property was not truly stated, or in case of
any fraud or false swearing by the insured touching any matter re-
lating to the insurance, whether before or after the loss; and, fur-
thermore, that since the alleged fire the insured had made false and

fraudulent statements to the defendant, to wit, in certain papers purporting to be proofs of loss, and otherwise in writing, and orally, and had falsely stated and sworn, among other things, in said pretended proofs of loss, that the actual value of the property covered by the insurance was $13,223.71, and that the damage thereto by reason of the fire was the same sum, whereas in fact the actual value of the property did not exceed the sum of $3,500, and that the insured did not have or own in the premises at the time of the fire all the property they claimed to have and own in said pretended proofs of loss. They also alleged in paragraph 6 that after said alleged loss the plaintiffs submitted to an examination under oath, "and in said examination under oath repeated said false and fraudulent statements to this defendant, and again in their complaint herein repeated said false and fraudulent statements to this defendant." After issue joined, the plaintiffs served a demand to be given within two days an inspection of all papers and documents bearing on the merits of the action, including the examination of the plaintiffs, in the possession of the attorneys, or in the possession of the defendants, or one of them, offering in the alternative to accept sworn copies of such documents and exhibits, and to pay any expense incurred in having such copies made. This novel demand not being complied with, the plaintiffs applied to the court, which, upon their petition, and upon affidavits of both parties, made an order requiring the defendants to give to the attorneys of the plaintiffs a sworn copy of said examination, or to allow inspection thereof with copy, or to deposit the same with the clerk of the court, there to remain open for inspection and copy. This was affirmed by the general term in an order from which comes this appeal.

Whether one party may have discovery and inspection of papers in the possession of the other rests in the discretion of the court or judge; that is, not in the humor or fancy of the person or persons presiding at a tribunal, but in a sound discretion, exercised discreetly, guided by law, governed by rule, and regulated by practice. The rule governing this application is one of the general rules of practice, which prescribes as a condition that the party applying shall show to the satisfaction of the court three things: (a) The materiality and necessity of the discovery and inspection sought; (b) the particular information which he requires; and (c) in the case of books and papers, that there are entries therein as to the matter of which he seeks discovery or inspection. Compliance with none of these three requirements is shown by the plaintiffs. There is no suggestion in their papers of entries in the transcript of the examination as to matter of which they seek discovery or inspection. Nor is the particular information which they require therein pointed out. Both the affidavits of the plaintiffs and the brief of their counsel contain assertions that the discovery and inspection sought are material and necessary, but, saving expressions of apprehension and possible prejudice, in what respect they are material or necessary is not suggested. There is no evidence to show why or how the inspection would or could discover to them what they do not know now, or that it would provide material to sup-

port their case upon the direct, or aid in an anticipatory rebuttal, or even further to explain to or acquaint them with the case of their adversary. In only one of the long array of cases cited herein were discovery and inspection allowed without showing more than is shown in the petition of the plaintiffs and the affidavit of their counsel. That was Powers v. Elmendorf, 4 How. Prac. 60, decided by Mr. Justice Harris at special term, in July, 1849. It was stated in the petition therein that "the discovery and production of the title papers and deeds vesting or supposed to vest title to said premises in the said William H. Elmendorf are necessary to enable the plaintiffs to reply properly to the answers, and to prepare for trial." After premising that the question before him involved the practical application of the 388th section of the Code of Procedure, empowering a judge or justice, in his discretion, and upon due notice, to order either party to give to the other an inspection and copy, or permission to copy, books, papers, and documents in his control; and after reciting the rule in chancery that a plaintiff "shall only have discovery of what is necessary to his own side, as of deeds he claims under, and not pry into that of the defendant," and observing that, if that rule was to be applied, the plaintiffs obviously were not entitled to the discovery they sought,—the learned justice said of the petitioners before him: "They do not pretend that the defendants have within their power any papers or documents which they wish to use in support of their title to the premises. On the contrary, they avow it to be their purpose, in asking for this discovery, to ascertain upon what evidence the defendants expect to protect their possession." Then he gave his construction of the statute, with the consideration moving him thereto, which have been referred to frequently since as "the reasoning of Justice Harris," and thereupon directed the defendants to deliver to the plaintiffs' attorneys copies of all papers and documents in their possession or control upon which they will rely at the trial as containing evidence to sustain the allegations in their answer. Were this an authoritative exposition of the present law and practice, it would be decisive of the present appeal. The learned justice, however, was not at agreement with his colleagues and contemporaries. In a memorandum of a decision made by him at chambers a few months later (Bank v. Monteath, 4 How. Prac. 280) he narrated that he had supposed that the 388th section of the Code of Procedure was intended to and did embrace every case in which a party had the right to claim discovery by his adversary. "But some of the judges who met at the general session of the court held in August last thought otherwise. Hence the 8th, 9th, 10th, and 11th rules were adopted, with a view to provide for a discovery under the still unrepealed provisions of the Revised Statutes," of which rules he did not speak particularly, saving that he said they could not operate to deprive parties of their rights. The differences ensuing in the construction put upon and the practice under the 388th section of the Code of Procedure were had in view of the preparation of the article relating to "discovery of books and papers" in the Code of Civil Procedure, the commissioners of revision stating respecting it, in their

report to the legislature, that they had endeavored to remove some obscurities in both the existing statutes, and to provide against some serious abuses. Almost literally following their recommendations, the legislature enacted the present section 803, wherein the fruitful word "discretion" does not appear, and also the next following section (804), requiring that "the general rules of practice must prescribe the cases in which a discovery or inspection may be so compelled and the proceedings for that purpose." Under the sections as presently worded, and the pursuant rules, having the same force and significance as though they were enacted by the legislature (McDermott v. Board, 25 Barb. 635), no court hitherto, so far as pointed out by counsel herein, has allowed discovery and inspection because counsel has advised, and both plaintiffs and counsel have deposed, that they were necessary, or because of expressions of desire and anxiety to peruse a paper which may or may not be used by an adversary as evidence, or because it appeared that witnesses have been unmindful of the homely fact that in testifying it is well to tell the truth, as then one need not remember what he has said. The order of the special term of the city court granting discovery herein was not based upon a showing of facts warranting that relief. The order of the general term of that court affirming that order is therefore appealable hereto, and should be reversed.

Order reversed, with costs to the appellants. All concur.